897 So.2d 131 (2004)
James D. PETERS, Individually, James D. Peters, Administrator of the Estate of Gloria Dean, Daughter of James and Gloria Peters, and Son of James and Gloria Peters
v.
Richard V. Truitle HORTMAN, MD and ABC Insurance Company.
No. 2003 CA 2597.
Court of Appeal of Louisiana, First Circuit.
October 29, 2004.
Writ Denied February 4, 2005.
*132 Frank J. D'Amico, Jr., Judith Ann Gic, New Orleans, for Plaintiffs-Appellants James D. Peters, Individually, and James D. Peters Administrator of the Estate of Gloria Dean, Daughter of James and Gloria Peters, and Son of James and Gloria Peters.
Nicholas Gachassin, Jr., Nicholas Gachassin, III, Lafayette, for Defendant-Appellee Richard V. Hortman, MD.
Before: CARTER, C.J., PETTIGREW, and McDONALD, JJ.
PETTIGREW, J.
In this medical malpractice case, plaintiffs appeal from a trial court judgment granting summary judgment in favor of defendant and dismissing plaintiffs' claims against defendant with prejudice. For the reasons that follow, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
On January 7, 2002, plaintiffs, James D. Peters, individually and on behalf of his children ("plaintiffs"), filed the instant medical malpractice action against defendants, Dr. Richard V. Truitle Hortman and his insurer, alleging that Dr. Hortman deviated from the applicable standard of care in providing medical treatment to Gloria Dean Peters, who, according to the record, passed away on April 19, 1997. Dr. Hortman subsequently answered the petition and propounded interrogatories on plaintiffs, which were answered on February 27, 2002.
On February 6, 2003, approximately one year later, Dr. Hortman filed a motion for summary judgment, alleging that there were no genuine issues as to any material fact and that he was entitled to judgment as a matter of law. In support of his motion for summary judgment, Dr. Hortman submitted the "Opinion And Reasons" of the medical review panel and the affidavit of Dr. Jay Smith, a member of the medical review panel. Noting that plaintiffs failed to name the experts who would testify that Dr. Hortman breached the standard of care in providing treatment to Mrs. Peters, Dr. Hortman maintained he was entitled to summary judgment as a matter of law. In response thereto, plaintiffs supplemented their answers to interrogatories on March 20, 2003, identifying their expert, Dr. Paul Blaylock, and attaching a copy of Dr. Blaylock's curriculum vita.
*133 The motion for summary judgment proceeded to hearing on June 18, 2003, at which time the parties argued their respective positions. Counsel for Dr. Hortman provided the following theory on why summary judgment was appropriate:
We propounded discovery. We asked for the names of their expert witnesses. We did not receive them. We filed a Motion for Summary Judgment. We've supported the Motion for Summary Judgment with the medical review panel opinion along with an affidavit of one of the panel members that was on the panel.
The Louisiana law in a medical malpractice case on a summary judgment for the plaintiff, once we introduce those things, we have satisfied our burden. It's now up to the plaintiff, at this point in time, to come forward with an affidavit of their own medical expert. The case law is clear. It's not sufficient to simply, at this stage, name an expert, allege that you're going to call an expert, submit a letter from a doctor that's not in the form of an affidavit.
You have to, at this stage and time, submit an affidavit of a medical expert witness. If you don't submit a countervailing affidavit, all the appellate courts in Louisiana have held that that's insufficient to [oppose] a summary judgment, and the summary judgment should be granted.
In response thereto, counsel for plaintiffs advised the court that they had a report from Dr. Blaylock, in the form of a letter, outlining what Dr. Blaylock believed to be malpractice by Dr. Hortman in his treatment of Mrs. Peters. When asked by the court why this was not done in affidavit form, plaintiffs' counsel responded, "I do know that we felt the report from the doctor would be sufficient for them to know what the doctor would be testifying to." After hearing from both sides, the trial court granted summary judgment in favor of Dr. Hortman, noting, "It's very clear in the law what needs to be done. It's very clear. You need to submit affidavits in opposition at least four days before the hearing on the motion." The court signed a judgment in accordance with its findings on July 21, 2003.
Following the court's ruling on Dr. Hortman's motion for summary judgment, plaintiffs timely filed a motion for new trial, arguing they "should not be caused to suffer the drastic measure of having their lawsuit dismissed when in fact an expert has been identified to outline what malpractice had occurred." Plaintiffs attached Dr. Blaylock's affidavit to their motion for new trial, along with an affidavit from their attorney attesting that plaintiffs had supplemented their answers to interrogatories on March 20, 2003, and identified Dr. Blaylock as their expert at that time. Plaintiffs' motion for new trial was denied by the court on July 21, 2003.
This appeal by plaintiffs followed. Plaintiffs have raised the following assignments of error:
1. The trial court erred in granting appellee's motion for summary judgment by not allowing admissible evidence submitted by the appellants to oppose the motion for summary judgment.
2. The party opposing the motion for summary judgment may oppose the filing of affidavits, as they are not admissible evidence at trial.
3. The trial court judge erred by abusing his discretion in denying the motion for a new trial when plaintiffs subsequently obtained the affidavit of the medical expert.[1]

*134 DISCUSSION
Initially, we consider plaintiffs' allegation that the trial court erred in granting summary judgment in favor of Dr. Hortman. In determining whether summary judgment is appropriate, appellate courts conduct a de novo review of the evidence, employing the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Henderson v. Kingpin Development Co., 2001-2115, p. 4 (La.App. 1 Cir. 8/6/03), 859 So.2d 122, 126. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B). Summary judgment is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ. P. art. 966(A)(2); Thomas v. Fina Oil and Chemical Co., XXXX-XXXX, pp. 4-5 (La.App. 1 Cir. 2/14/03), 845 So.2d 498, 501-502.
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La.Code Civ. P. art. 966(C)(2); Robles v. Exxonmobile, XXXX-XXXX, p. 4 (La.App. 1 Cir. 3/28/03), 844 So.2d 339, 341. Moreover, when a motion for summary judgment is made and supported as provided by law, an adverse party may not rest on the mere allegations or denials of his pleading. His response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, will be rendered against him. La.Code Civ. P. art. 967.
In support of his motion for summary judgment, Dr. Hortman submitted the opinion of the medical review panel (finding that he did not breach the applicable standard of care), along with the affidavit of Dr. Jay Smith (one of the panel's members who reiterated his opinion that Dr. Hortman conformed to the applicable standard of care when he treated Mrs. Peters). At that point, Dr. Hortman's motion for summary judgment was properly supported and showed no genuine issue of material fact. The burden then shifted to plaintiffs to set forth specific facts showing that there was a genuine issue of material fact precluding summary judgment.
*135 To defeat the motion for summary judgment, plaintiffs offered their supplemental answers to interrogatories, wherein they named Dr. Blaylock as their medical expert. Moreover, during argument before the court on June 18, 2003, counsel for plaintiffs advised the court that they had a report from Dr. Blaylock, in the form of a letter rather than an affidavit, outlining his opinion as to how Dr. Hortman had breached the standard of care in his treatment of Mrs. Peters.
Based on the evidence properly before it at the June 18, 2003 hearing, the trial court granted summary judgment in favor of Dr. Hortman, noting that plaintiffs failed to submit affidavits in opposition to the motion. We agree with the trial court that at the time of the hearing, summary judgment was warranted. When the trial court ruled on the motion for summary judgment, there were no genuine issues of material fact as to whether Dr. Hortman breached the applicable standard of care. However, plaintiffs subsequently filed a timely motion for a new trial, along with a properly executed affidavit from their expert witness. The trial court summarily denied same. It is the court's denial of the motion for a new trial that we find egregious.
Two articles govern the circumstances under which a new trial should and can be granted. Louisiana Code of Civil Procedure article 1972 provides peremptory grounds for granting a new trial, such as if a judgment is clearly contrary to the law and the evidence or if a party has discovered evidence important to the case. Louisiana Code of Civil Procedure article 1973 gives the trial court discretion to grant a new trial "in any case if there is good ground therefor." In applying Article 1973, the facts and circumstances of each individual case must be examined. When an examination of the facts convinces the trial court that the judgment would result in a miscarriage of justice, a new trial should be ordered. Lamb v. Lamb, 430 So.2d 51, 53 (La.1983). Although the trial court has much discretion in determining if a new trial is warranted, an appellate court should not hesitate to set aside the ruling of the trial court in a case of manifest abuse of that discretion. Id.
During the June 18, 2003 summary judgment hearing, plaintiffs attempted to present the court with Dr. Blaylock's expert report outlining his opinion as to how Dr. Hortman had breached the applicable standard of care in treating Mrs. Peters. The court refused to consider the expert report, noting that plaintiffs were required to submit their evidence in opposition to the summary judgment in the form of an affidavit.[2] After the court rendered summary judgment in favor of Dr. Hortman, plaintiffs timely filed a motion for a new trial. Attached to plaintiffs' motion was Dr. Blaylock's affidavit. The court denied plaintiffs' motion for a new trial.
It is clear from a review of the record that prior to the hearing on the motion for *136 summary judgment, plaintiffs had identified Dr. Blaylock as their expert. Moreover, at the time of the summary judgment hearing, plaintiffs submitted a copy of Dr. Blaylock's report, although not in affidavit form. Thereafter, plaintiffs submitted a properly executed affidavit from Dr. Blaylock with their motion for a new trial. From our review of said affidavit, we find it is of sufficient evidentiary quality that it could possibly affect the trial court's decision with regard to Dr. Hortman's motion for summary judgment. Thus, we conclude that given the peculiar circumstances of this case, a miscarriage of justice would result by depriving plaintiffs an opportunity to defend the summary judgment motion. "To allow the judgment below to stand would be to permit technical pleading rules to triumph over actual justice." Lamb, 430 So.2d at 54.

CONCLUSION
For the above and foregoing reasons, we reverse the trial court's denial of plaintiffs' motion for a new trial and remand for further proceedings consistent with this opinion. All costs associated with this appeal are assessed against defendant/appellee, Dr. Richard V. Truitle Hortman.
REVERSED AND REMANDED.
NOTES
[1] We note that the denial of a motion for a new trial is not an appealable judgment absent a showing of irreparable harm. Morrison v. Dillard Dept. Stores, Inc., 99-2060, p. 2 (La.App. 1 Cir. 9/22/00), 769 So.2d 742, 744, writ denied, XXXX-XXXX (La.2/2/01), 784 So.2d 646. However, when a party has appealed from a final judgment, it is permissible for him to raise, and the court to consider in connection with the appeal, complaints relating to the denial of a motion for a new trial. Dural v. City of Morgan City, 449 So.2d 1047, 1048 n. 2 (La.App. 1 Cir.1984). Thus, in connection with the appeal by plaintiff in the instant case, we will consider plaintiffs' argument concerning the court's denial of the motion for a new trial along with plaintiffs' argument relating to the court's grant of summary judgment.
[2] Plaintiffs argue in brief to this court that when the trial court refused to consider their expert's report, they "kindly requested a short amount of time in which they would get the report in affidavit form," but were refused this request by the court. We note that pursuant to La.Code Civ. P. art. 967(C), "If it appears from the affidavits of a party opposing the motion that for reasons stated he cannot present by affidavit facts essential to justify his opposition, the court may ... order a continuance to permit affidavits to be obtained...." In our review of the June 18, 2003 hearing transcript, we were unable to find any such request by plaintiffs during the June 18, 2003 hearing. Nonetheless, even if plaintiffs did, in fact, move for a continuance, they did not file any affidavits in conformity with this part of Article 967 and thus, would not be entitled to this relief.